**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

H.H. FRANCHISING SYSTEMS, INC.,                    CASE NO.: 1:12-cv-708

        Plaintiff,                                                     Judge Michael R. Barrett

    v.

DORI ARONSON, et al.,

        Defendants.

**OPINION AND ORDER**

This matter is before the Court on Plaintiff H.H. Franchising Systems, Inc.'s ("HHFS")

July 1, 2014 Motion for Summary Judgment against Defendants Dori Aronson ("Aronson") and

Redi to Help, LLC (collectively, "Defendants"). (Doc. 22). Defendants have not filed a

response in opposition.

I.    **BACKGROUND**

    A.    **Procedural Background**

On September 18, 2012, HHFS filed its Complaint against Defendants. (Doc. 1). In the

Complaint, HHFS asserted claims for (1) Refusal to Comply with Post-Termination Obligations

under Franchise Agreement; (2) Breach of Contract; (3) Misappropriation of Trade Secrets; (4)

Tortious Interference with Contract (against Redi to Help); (5) Trademark Infringement under

Section 32(1) of the Lanham Act (15 U.S.C. § 1114); (6) Unfair Competition by Infringement of

Common Law Rights; (7) Violation of Lanham Act by Use of False Designation in Interstate

Commerce; (8) Action for Accounting; and (9) Unjust Enrichment. (Doc. 1, PageID 9-17).

Defendants also demanded preliminary and permanent injunctive relief against Defendants. (Id.,

PageID 17-18).

1

On February 25, 2013, HHFS applied for the clerk to enter a default judgment against Defendants due to their failure to file a response to the Complaint within the requisite timeframe. (Doc. 5). One day later, the Clerk filed an entry of default as to Defendants. (Doc. 6). On March 19, 2013, HHFS filed a motion for default judgment against Defendants. (Doc. 7). On May 16, 2013, prior to a hearing on the motion, counsel appeared for Defendants. (Doc. 9). On June 18, 2013, Defendants filed an Answer with Counterclaims. (Doc. 12).[1] A default judgment thus was not entered against Defendants.

On November 1, 2013, Defendants' counsel filed a motion to withdraw as counsel. (Doc. 19). In a November 6, 2013 status call, the Court indicated it would grant the motion to withdraw, but would attempt to contact Defendants to keep the matter progressing. In the meantime, HHFS filed the instant motion for summary judgment. (Doc. 22). After having received no indication from Defendants as to how they would proceed in this matter once counsel withdrew, the Court granted counsel's motion to withdraw and set a status call, providing notification to Aronson via regular U.S. mail to the address she provided to the Court. Neither Aronson nor any representative for Defendants appeared on that status call. Neither Aronson nor any representative for Defendants has since notified the Court of an intent to proceed in the lawsuit.[2]

### B. Uncontested Factual Evidence

The following relevant facts set forth by HHFS are uncontested by Defendants.

---

[1] HHFS filed a separate motion for summary judgment on Defendants' counterclaims. An order on that motion was filed contemporaneously with this order.

[2] It is noted that while Aronson could proceed *pro se*, Redi to Help may not represent itself in this proceeding. *See State Auto Ins. Co. v. Thomas Landscaping & Constr., Inc.*, 494 F. App'x 550, 553 (6th Cir. 2012) ("It is settled law that a corporation must appear in federal court through licensed counsel.") (citing *Rowland v. Cal. Men's Colony, Unit 11 Men's Advisory Counsel*, 506 U.S. 194, 202 (1993); *Doherty v. Amer. Motors Corp.*, 728 F.2d 334, 340 (1984)).

2

HHFS is an Ohio Corporation with its principal place of business in Cincinnati, Ohio. (Doc. 23, PageID 262).  It franchises business that offer senior care, home health care, personal emergency response, medication management, and vital signs monitoring services.  (Id., PageID 263).  Specifically, the "Home Helpers franchise" offers senior care and home healthcare services identified by the trademark "HOME HELPERS" and associated design mark, while the "Direct Link franchise" offers personal emergency response, medication management, and vital signs monitoring services identified by the trademark DIRECT LINK and associated design mark.  (Id.).  The HOME HELPERS trademark first was used in 1997 and the DIRECT LINK trademark first was used in 1998.  (Id.).  HHFS has more than 310 Home Helpers franchises and more than 270 Direct Link franchises throughout the United States, and it has invested substantial time and resources protecting and promoting the trade names HOME HELPERS and DIRECT LINK.  (Id.).

Effective April 2007, Aronson signed a Home Helpers franchise agreement and a Direct Link franchise agreement with HHFS in Hamilton County, Ohio.  (Id.; Doc. 1-1, PageID 19-106).  Aronson then assigned her interest to and operated the franchises in conjunction with Redi to Help.  (Doc. 23, PageID 263).  Each franchise agreement signed by Aronson provided for a ten-year term.  (Doc. 22-2, PageID 259; Doc. 23, PageID 263; *see also* Doc. 1-1, PageID 23, 65).  The Home Helpers franchise agreement also required Aronson to (a) submit a weekly sales report,[3] and (b) pay HHFS a weekly royalty and monthly National Branding Fees to HHFS.  (Doc. 1-1, PageID 25-26, 30; Doc. 23, PageID 265).  The monthly royalty fee was six percent of the franchisee's gross revenues or $50.00 per week, whichever was greater.  (Doc. 1-1, PageID 25; Doc. 22-2, PageID 259).  The Direct Link franchise agreement required Aronson to (a)

---

[3] An Addendum to the Franchise Agreement appears to change the requirement from a weekly to a monthly submission of sales reports.  (Doc. 1-1, PageID 104).

submit monthly income statements to HHFS, (b) to pay monthly National Branding Fees, and (c) to pay a monitoring fee of $11.00 for each Personal Emergency Response Unit, which increased annually by 12 units. (Doc. 1-1, PageID 66, 68, 71; Doc. 22-2, PageID 260-61; Doc. 23, PageID 265-66). Both franchise agreements also contained a "late fee" provision, requiring payment of the greater of $20.00 or 10 percent the amount due for payments more than 5 days late, and 18 percent interest on payments more than 30 days late. (Doc. 1-1, PageID 26, 66; Doc. 22-2, PageID 259). The Franchise Agreements also set forth multiple circumstances under which HHFS could terminate the franchise agreements. (Doc. 1-1, PageID 46-47, 87-88; Doc. 23, PageID 266). Upon termination of the franchise agreements, Defendants were to cease operating as Home Helpers and Direct Link, cancel all Home Helpers and/or Direct Link telephone numbers and advertisements, and pay all outstanding fees owed to HHFS. (Doc. 1-1, PageID 48-49, 89; Doc. 23, PageID 266). Defendants also were prohibited from directly or indirectly operating a business that offers any of the same services as or that competes with HHFSI or its franchisees for 1 year within the franchise territories. (Doc. 1-1, PageID 50-51; Doc. 23, PageID 266).[4] Aronson agreed that failure to comply with the non-competition covenants "would result in irreparable injury to Franchisor for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of, and agrees to pay all court costs and reasonable attorneys' fees incurred by Franchisor in obtaining, an injunction prohibiting any conduct by Franchisee in violation of the terms of this Article 15." (Doc. 1-1, PageID 51, 90; Doc. 23, PageID 267).

In January 2009, HHFS terminated Defendants' franchise agreements due to Defendants' failure to make the required Royalty and National Branding Fund payments. (Doc. 23, PageID

---

[4] Those territories include the following postal zip codes: 07960, 07920, 08807, 08836, 08869, 08876, 08502. (Doc. 1-1, PageID 102).

267).  In April 2009, however, HHFS and defendants negotiated a rescission of the termination as set forth in the Rescission Agreement.  (Id., PageID 267, 274-76).  Both Defendants acknowledged that they were parties to the franchise agreements and ratified and affirmed the franchise agreements in all material respects. (Id.).  As a condition of the rescission, Defendants agreed to release any and all claims that they may have had against HHFS.  (Id., PageID 267, 275).

Thereafter, Defendants again failed to pay Royalty and National Branding Fees (since 2008), failed to submit the requisite sales reports to HHFS, and failed to submit their income tax returns to HHFS.  (Id., PageID 267; Doc. 22-2, PageID 259).  Defendants received multiple notifications of those breaches of the franchise agreements and were provided with opportunities to cure the defaults.  (Doc. 23, PageID 268).  Defendants did not cure the defaults.  (Id.).

On June 3, 2011, HHFS sent Defendants a termination notice.  (Id., PageID 268, 277).  The termination notice indicated that Defendants' Home Helpers and Direct Link franchises would be terminated in 60 days after Defendants' receipt of the notice.  (Id.).  The notice also indicated that after that 60-day period, Defendants would be required to (a) cease operating the franchises or holding themselves out as a Home Helpers or Direct Link franchisee; (b) cease to use any equipment, materials, confidential methods, procedures, or techniques associated with the franchise systems, or display any of the trademarks, logos, slogans, or symbols; (c) turn over their Home Helpers and Direct Link operations manual, brochures, contracts, correspondence, customer files, computer database, records, and other materials relating to the franchises; (d) assign their business telephone numbers to HHFS; and (e) refrain from operating a competing business in the same franchise territories for one year.  (Id., PageID 268, 277-78).  The termination became effective on August 23, 2011.  (Id., PageID 269).

5

HHFS demanded multiple times that Defendants comply with those post-termination covenants. (Id., PageID 269, 279-83). Defendants ignored HHFS demands, refused to assign the telephone number to HHFS, continued to provide senior care services, and continued to use the HOME HELPERS trademark to do so. (Id.). On July 19, 2012, Aronson personally answered a telephone call placed to the telephone number associated with her Home Helpers and Direct Link franchises and identified herself by saying "Home Helpers." (Id., PageID 269). In July 2012, HHFS received a Certificate of Liability Insurance from an insurance carrier for Home Helpers and Direct Link franchisees that confirmed that "Redi to Help, LLC dba Home Helpers & Direct Link" had obtained liability insurance necessary to operate the franchises through July 2014. (Id., PageID 270, 284). Then, on or about August 15, 2013, a New Jersey attorney contacted HHFS to indicate that he was representing an employee of Defendants in a workers compensation dispute and he indicated that Defendants were operating as Home Helpers and that Aronson was "holding on" to the business "until they pull the plug." (Doc. 23, PageID 270).

According to HHFS, Defendants now owe HHFS for payments they were required to make to it for the ten-year term of the franchise agreements. (Doc. 22-2, PageID 260-61). Specifically, HHFS avers that Defendants owe it either a Minimum Royalty total of $17,168.11 for the Home Helpers franchise, which includes $1,968.11 in delinquent royalty payments (including interest and late fees) as well as $15, 200.00 in additional unpaid Minimum Royalties, or $204,482.88 in royalties based upon expected total revenues from the historical performance of other Home Helpers franchises from 2008 until the end of the ten-year term in April 2017 ($3,408,048.07 X 6 percent). (Doc. 22-2, PageID 260). In addition, HHFS avers that Defendants owe a Home Helpers/Direct Link National Branding Fee total of $28,530.47, which includes $7,630.47 in delinquent National Branding Fees (including interest and late fees) and

$20,900.00 in additional National Branding Fees from July 2011 until the end of the ten-year term.  (*See* Doc. 22-2, PageID 260-61).[5]  HHFS further claims that Defendants owe $79,134 in Direct Link monitoring fees, which includes $11.00 per unit and which units began being installed annually in 12 unit-increments beginning on the first anniversary of the franchise agreement.  (Doc. 1-1, PageID 68; Doc. 22-2, PageID 260-61).  Finally, under Section 13.3 of the franchise agreements,[6] Defendants agreed to pay HHFS all damages, costs, and expenses, including attorney fees, incurred by HHFS as a result of any default that Defendants failed to cure within the applicable cure period.  (Doc. 1-1, PageID 48, 88; Doc. 22-2, PageID 261).

## II.   SUMMARY JUDGMENT STANDARD AND ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" only if its resolution affects the outcome of the suit.  *Id.*

On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint

---

[5] The affidavit of Keith Tilley indicates that the total amount owed is $20,538.47, which appears to be a typographical error given that the addition of $7,630.47 in delinquent National Branding Fees and the $20,900.00 in additional National Branding Fees from July 2011 until the end of the ten-year term results in a total amount of $28,530.47.  (*See* Doc. 22-2, PageID 260-61).

[6] Article 13 governs "Termination."  (Doc. 1-1, PageID 46, 87).

to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 249. Where a party fails to address another party's assertion of fact, the Court may properly consider the fact undisputed for purposes of the motion and grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)-(3). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252. Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Here, HHFS moves for summary judgment on its first and second claims for breach of contract against Defendants.[7]

## A. Breach of Contract Claims (Counts One and Two)

To prove a breach of contract under Ohio law, a party must prove four elements: (1) the existence of a valid contract; (2) performance by the claimant; (3) breach by the opposing party; and (4) resulting damages. *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (citing *Wauseon Plaza Ltd. P'ship V. Wauseon Hardware Co.*, 156 Ohio App. 3d 575 (6th Dist. App. 2004)).[8] As explained below, HHFS has presented evidence to satisfy each of those four elements for both claims and that evidence has not been countered by Defendants. Accordingly,

---

[7] Although HHFS does not specify that it is moving for summary judgment on those two counts only, its argument is focused on contractual breaches, and there is no mention of other claims or statutes under which HHFS brings its other claims. As such, the Court will address only the breach of contract claims in Counts One and Two.

[8] Both franchise agreements indicate that Ohio law should govern any disputes arising thereunder. (Doc. 1-1, PageID 54, 94).

there is no genuine issue of material fact and HHFS is entitled to summary judgment on its first and second claim.

### 1. First claim—breach of post-termination covenants

HHFS has proven all four elements of its first claim for breach of the post-termination covenants, and thus, is entitled to summary judgment on that claim.

#### a. Valid Contract

HHFS has presented evidence that it entered into franchising agreements with Aronson for the Home Helpers franchise and the Direct Link franchise, and that Aronson operated her Home Helpers franchise and Direct Link franchise in coordination with Redi to Help. No evidence or argument has been presented to suggest that the franchise agreements are invalid or unenforceable. Accordingly, there are no genuine issues of material fact as to the first element of HHFS's claim.

#### b. Performance by HHFS

HHFS has presented evidence that it performed its obligations under the franchise agreements. In particular, HHFS has presented evidence that it properly terminated Defendants' franchises in accordance with the terms of the franchise agreements and has requested multiple times thereafter that Defendants comply with the post-termination covenants.[9] No evidence or argument has been presented that would show otherwise. Accordingly, there are no genuine issues of material fact as to the second element of HHFS's claim.

#### c. Breach by Defendants

---

[9] To the extent Defendants could argue that HHFS failed to perform under the franchise agreements as set forth in their counterclaims, such an argument would not be well taken in light of the order issued contemporaneously with this order in which the Court grants HHFS summary judgment on Defendants' counterclaims.

HHFS contends that Defendants breached the franchise agreements by failing to comply with multiple of their obligations upon termination as set forth in Articles 14 and 15 of the franchise agreements.  (Doc. 22, PageID 228-29).  Each obligation specifically raised by HHFS and the evidence presented in regards to breach of that obligation (Doc. 22, PageID 228-29) are discussed below.

First, HHFS points out that Defendants were required to assign the business telephone number to HHFS.  (Id., PageID 228).  To demonstrate that Defendants have failed to do so, HHFS has presented evidence that Defendants refused to assign the business telephone number to HHFS and that on July 19, 2012, Aronson personally answered a telephone call placed to the telephone number associated with her Home Helpers and Direct Link businesses by saying "Home Helpers."  (Doc. 23, PageID 269).  No evidence or argument has been presented to show otherwise.  Accordingly, the uncontested evidence demonstrates that Defendants breached Article 14 of the franchise agreements by failing to assign the business telephone number to HHFS.

Second, HHFS points out that Defendants were required to discontinue the use of HHFSI trademarks.  (Doc. 22, PageID 228).  To demonstrate that Defendants have failed to do so, HHFS has presented evidence that Defendants ignored HHFS's demands to comply and continued to use the HOME HELPERS and DIRECT LINK trademark.  (Doc. 23, PageID 269).  HHFS further points to evidence that on July 19, 2012 Aronson personally answered the telephone call placed to the Home Helpers and Direct Link businesses by saying "Home Helpers" and that HHFS received a Certificate of Liability from an insurance carrier confirming that "Redi to Help, LLC dba Home Helpers & Direct Link" had obtained liability insurance to operate the Home Helpers and Direct Link businesses through July 2014.  (Id.).  Finally, HHFS presented evidence

10

that it was aware that Defendants continued to operate as Home Helpers. (Id., PageID 270). No evidence or argument has been presented to show that Defendants are not and have not been using the trademarks post-termination. Accordingly, the uncontested evidence demonstrates that Defendants have breached Article 14 of the franchise agreements by continuing to use HHFS's trademarks post-termination.

Third, HHFS points out that Defendants were required to stop operating the franchises following the August 2011 termination. (Doc. 22, PageID 228). To demonstrate that Defendants have failed to do so, HHFS relies on the same evidence set forth previously. (Id.). Again, no evidence or argument has been presented to show that Defendants have ceased operating the franchises. Accordingly, the uncontested evidence demonstrates that Defendants have breached Article 14 of the franchise agreements by continuing to operate the franchises post-termination.

Fourth, HHFS points out that Defendants were prohibited post-termination from engaging in any business offering the same services as its former franchises within the same territory as its former franchises. (Doc. 22, PageID 228). Given the previously-discussed evidence that shows Defendants continued to operate the franchises post-termination, HHFS has shown Defendants violated that covenant. No evidence or argument has been presented to show that Defendants ceased operating any franchises within that geographical territory. Accordingly, the uncontested evidence demonstrates that Defendants have breached Article 15 of the franchise agreements by continuing to operate the franchises in that same geographical territory post-termination.

Fifth, HHFS points out that Defendants were required to pay any and all outstanding fees owed to HHFS. (Doc. 22, PageID 228). To demonstrate that Defendants have failed to do so, HHFS has presented evidence as to Defendants' delinquency. (Doc. 22-2, PageID 260-61). No

11

evidence or argument has been presented to show that Defendants are not delinquent as demonstrated by HHFS.  Accordingly, the uncontested evidence demonstrates that Defendants have breached Article 14 of the franchise agreements by failing to pay all outstanding fees owed to HHFS.

### d.  Damages

HHFS contends that it has been damaged by Defendants' breaches.  Not only does HHFS present evidence as to the monetary damages it has suffered (Doc. 22-2), it also has presented evidence that Defendants agreed that a violation of the post-termination non-compete covenant "would result in irreparable injury to HHFS for which no adequate remedy at law would be available and [Defendants] accordingly consent[ed] to the issuance of, and agree[d] to pay all court costs and reasonable attorneys' fees incurred by [HHFS] in obtaining, an injunction prohibiting any conduct by Franchisee in violation of the terms of this Article 15."  (Doc. 1-1, PageID 51); *see also* (Doc. 22, PageID 228).  No evidence or argument has been presented to show otherwise.  Accordingly, the uncontested evidence demonstrates that HHFS has been damaged by Defendants' breaches of the franchise agreements, in an amount to be determined.

### 2.  Second claim—breach of contractual payment obligations

HHFS has proven all four elements of its second claim for breach of the contractual payment obligations, and thus, is entitled to summary judgment on that claim.

### a.  Valid Contract

As stated above, HHFS has presented evidence that it entered into franchising agreements with Aronson for the Home Helpers franchise and the Direct Link franchise, and that Aronson operated her Home Helpers franchise and Direct Link franchise in coordination with Redi to Help.  No evidence or argument has been presented to suggest that the franchise agreements are

invalid or unenforceable.  Accordingly, there are no genuine issues of material fact as to the first element of HHFS's claim.

### b.  Performance by HHFS

HHFS has presented evidence that it performed its obligations under the franchise agreements.[10]  No evidence or argument has been presented that would show otherwise. Accordingly, there are no genuine issues of material fact as to the second element of HHFS's claim.

### c.  Breach by Defendants

HHFS contends that Defendants breached the franchise agreements by failing to pay HHFS the required royalties, National Branding Fees, Direct Link monitoring fees, and HHFS's attorney fees, as well as the late fees and interest.  (Doc. 22, PageID 228-29).  Each obligation at issue and the evidence presented in regards to the breach of that obligation are discussed below.

First, HHFS points out that Defendants were required to pay it royalties under the Home Helpers franchise agreement.  (Id., PageID 229; *see also* Doc. 1-1, PageID 25-26).  To demonstrate that Defendants have failed to do so, HHFS has presented evidence that Defendants have failed to pay the royalty since 2008 and failed to provide sales reports and tax returns to establish gross revenues.  (Doc. 22-2, PageID 259).  No evidence or argument has been presented to show otherwise.  Accordingly, the uncontested evidence demonstrates that Defendants breached the Home Helpers franchise agreements by failing to make the requisite royalty payments and failed to provide the sales reports and tax returns evidencing the gross revenues of the franchises.

---

[10] Again, to the extent Defendants could argue that HHFS failed to perform under the franchise agreements as set forth in their counterclaims, such an argument would not be well taken in light of the order issued contemporaneously with this order in which the Court grants HHFS summary judgment on Defendants' counterclaims.

Second, HHFS points out that Defendants were required to pay a combined Home Helpers/Direct Link National Branding Fee of $100.00 per month, which was raised to $250.00 per month effective January 1, 2010 and to $350 a month effective January 1, 2014.  (Doc. 22, PageID 230; *see also* Doc. 1-1. PageID 25-26).  To demonstrate that Defendants failed to do so, HHFS has presented evidence that Defendants are delinquent in their payments, including interest and late fees, and owe an additional amount for the period of July 2011 through the end of the term of the franchise agreement.  (Doc. 22-2, PageID 260).  No evidence or argument has been presented to show otherwise.  Accordingly, the uncontested evidence demonstrates that Defendants breached the Home Helpers franchise agreement by failing to pay the National Branding Fees that were required thereunder.

Third, HHFS points out that Defendants were required to pay a monitoring fee for each PERS unit under the Direct Link franchise agreement.  (Doc. 22, PageID 231; *see also* Doc. 1-1, PageID 71; Doc. 22, PageID 260-61).  Defendants have presented evidence that the fees have not yet been paid.  (Doc. 22-2, PageID 260-61).  No evidence or argument has been presented to show otherwise.  Accordingly, the uncontested evidence demonstrates that Defendants breached the Direct Link franchise agreement by failing to pay the required monitoring fees.

Fourth, HHFS points out that Defendants are required to pay HHFS all damages, costs, and expenses, including attorney fees, incurred by HHFS as a result of any default that Aronson failed to cure within the applicable cure period.  (Doc. 22, PageID 231; *see also* Doc. 1-1, PageID 47, 88).  Defendants have presented evidence, as discussed previously, that Defendants failed to cure the above-described defaults within the applicable cure period and thus still owes the damages, costs or expenses as required under the franchise agreements.  (Doc. 22-2, PageID 261).  No evidence or argument has been presented to show otherwise.  Accordingly, the

uncontested evidence demonstrates that Defendants have breached the Home Helpers and Direct Link franchise agreements by failing to pay the required fees and costs associated with their failure to cure the defaults.

### d.  Damages

HHFS contends that it has been damaged by Defendants' breaches.  In support, HHFS has presented evidence as to the monetary damages it claims it has suffered (Doc. 22-2, PageID 260-61).  No evidence or argument has been presented to show otherwise.  Accordingly, the uncontested evidence demonstrates that HHFS has been damaged by Defendants' previously described breaches of the franchise agreements, in an amount to be determined.

## III.  <u>PERMANENT INJUNCTION STANDARD AND ANALYSIS</u>

In considering whether permanent injunctive relief should be granted, a court considers four factors:  (1) whether the plaintiff has shown actual success on the merits of its claims; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the injunction.  *ACLU of Ky. v. McCreary Cnty.*, 607 F.3d 439, 445 (6th Cir. 2010) (recognizing that the standard for a permanent injunction is essentially the same as that for a preliminary injunction except that a plaintiff must prove actual success on the merits rather than a likelihood of success on the merits); *Chabad of S. Ohio v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004) (setting forth the four factors for preliminary injunctive relief).  These four considerations are 'factors to be balanced, not prerequisites that must be met.'" *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003)).  "[A] district court is not required to make specific findings concerning each of the four factors used in determining

[whether to grant injunctive relief] if fewer factors are dispositive of the issue." *City of Monroe*, 341 F.3d at 476.

HHFS seeks a permanent injunction to enjoin Defendants from directly or indirectly providing the same services as Home Helpers or Direct Link or otherwise competing with HHFS in the same geographical territories, to preclude the use of the Home Helpers and Direct Link trademarks, symbols or design marks, to enjoin Defendants from misrepresenting or falsely suggesting it is affiliated with a Home Helpers or Direct Link franchise or with HHFS's franchise system, and to enjoin further breaches of the franchise agreements' post-termination requirements by ordering Defendants to cease using the telephone number associated with the former franchises and to turn over the operations manual and all required documents in accordance with the franchise agreements. (Doc. 22, PageID 232-33). As the Court concludes that the balance of the factors weighs in favor of HHFS, HHFS is entitled to the requested permanent injunctive relief.

### A.  Actual Success on the Merits

In order to obtain the injunction, HHFS must have shown actual success on its breach of contract claim in regards to the post-termination obligations of Defendants. As explained above, HHFS has made that showing. Accordingly, the first factor for permanent injunctive relief is satisfied.

### B.  Irreparable Injury

As the Sixth Circuit has explained, "[a] plaintiff's harm from the denial of [injunctive relief] is irreparable if it is not fully compensable by monetary damages." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007) (internal quotations omitted). "[A]n injury is not fully compensable by money damages if the nature of

the plaintiff's loss would make the damages difficult to calculate." *Id.* (internal quotations omitted).

Here, HHFS has shown that Defendants agreed that a violation of the post-termination non-compete covenant "would result in irreparable injury to HHFS for which no adequate remedy at law would be available . . . ." (Doc. 1-1, PageID 51); *see also* (Doc. 22, PageID 228). That is sufficient.  In any event, the Court acknowledges that the continued unauthorized competition while using the resources of the franchise system could result in the loss of goodwill, could harm HHFS's reputation, and could otherwise impair the relationships between HHFS, its franchisees and their customers, all of which may result in damages that are not quantifiable.  Accordingly, the second factor for permanent injunctive relief is satisfied.

### C.  **Substantial Harm to Others and Public Interest**

The Court need not discuss the next inquiries as to whether the injunction would harm others and whether the public interest would be served by the injunction because the first two factors weigh heavily in favor of granting the permanent injunction.  Nevertheless, the Court would find minimal harm to others, or that such harm to others would be outweighed by the public interest in enforcing valid contracts and enjoining clear breaches of those contracts.  As such, the balance weighs in favor of HHFS.

## IV.  **CONCLUSION**

Consistent with the foregoing, HHFS's Motion for Summary Judgment against Defendants Aronson and Redi to Help (Doc. 22) is hereby **GRANTED**.  It is **ORDERED** that:

1.  Defendants, their officers, agents, servants, employees, licensees, subsidiaries, related companies, and persons or entities acting for, with, by, through or under them, are **PERMANENTLY ENJOINED** from directly or indirectly:

17

a. Promoting, selling, or providing senior care, home healthcare, personal emergency response, medication management, or vital signs monitoring services, or otherwise competing with HHFS within any of the following postal zip code for a period of one year after the date of this Order:  07920, 07960, 08502, 08807, 08836, 08869, and 08876;

b. Using the name HOME HELPERS or DIRECT LINK or similar variations thereof in any way in connection with any business, trade, profession, or other commercial endeavor;

c. Misrepresenting or falsely suggesting in any way that either Defendant is affiliated with HHFS, a Home Helpers or Direct Link franchise, or Plaintiff's franchise system; and

d. Using the HOME HELPERS or DIRECT LINK word or design mark, similar variations thereof, or any other trademark, logo, slogan, or commercial symbol used by Plaintiff, including, but not limited to, use in advertising or marketing of any kind (including the Internet, signage, Yellow Page or other print or electronic directories, on social media sites or other websites, or in communications with clients or the public.

2. Defendants must file with the Court and serve upon HHFS's counsel **WITHIN 30 DAYS AFTER THE DATE OF THIS ORDER**, an affidavit setting forth in detail the manner and form in which Defendants have complied with the requirements of this Order.

3. Defendants must transfer the telephone number (732) 656-1514 to HHFS or a party designated by HHFS **WITHIN 30 DAYS AFTER THE DATE OF THIS ORDER**.

4. To prevent further breaches of the franchise agreements, Defendants must turn over to HHFS, **WITHIN 30 DAYS AFTER THE DATE OF THIS ORDER**, Defendants' Home Helpers/Direct Link operations manual and all brochures, contracts, correspondence, client files, computer database, records and any other materials relating to Defendants' Home Helpers or Direct Link franchises, together with all copies thereof.

5. HHFS is entitled to an award of monetary damages against Defendants in an amount to be determined.

6. HHFS is entitled to an award of costs, expenses, and attorney fees incurred in this litigation against Defendants in an amount to be determined.

It is **FURTHER ORDERED** that:

1. HHFS shall submit **WITHIN 30 DAYS AFTER THE DATE OF THIS ORDER** a sworn statement and any necessary supporting documentation identifying

   a. The amounts owed and due by Defendants for royalties, National Branding Fees, and Direct Link monitoring fees;

   b. The precise calculations used to determine the amounts owed in subpart (a), including an explanation of how other franchises' gross revenues were used to estimate the gross revenues of Defendants' franchises;

   c. The reasons why the calculation as to the gross revenues of other franchises is a fair estimate of the gross revenues of Defendants' franchises; and

   d. Whether and when Defendants were sent or received notice of the National Branding Fee or Monitoring fees utilized by HHFI to calculate damages.

2. HHFS shall also submit **WITHIN 30 DAYS AFTER THE DATE OF THIS ORDER** a status report as to how it wishes to proceed on the remaining claims (counts three through nine) on which it did not move for summary judgment.

**IT IS SO ORDERED.**

s/Michael R. Barrett
MICHAEL R. BARRETT, JUDGE
UNITED STATES DISTRICT COURT