**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| H.H. FRANCHISHING SYSTEMS, INC., | CASE NO.: 1:12-cv-708 |
| Plaintiff, | Judge Michael R. Barrett |
| v. | |
| DORI ARONSON, et al., | |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff H.H. Franchising Systems, Inc.'s ("HHFS") July 1, 2014 Motion for Summary Judgment on the Counterclaims of Defendants Dori Aronson ("Aronson") and Redi to Help, LLC (collectively, "Defendants"). (Doc. 24). Defendants have not filed a response in opposition.

**I.     BACKGROUND**

**A.     Procedural Background**

On September 18, 2012, HHFS filed its Complaint against Defendants. (Doc. 1).[1] On February 25, 2013, HHFS applied for the clerk to enter a default judgment against Defendants due to their failure to file a response to the Complaint within the requisite timeframe. (Doc. 5). One day later, the Clerk filed an entry of default as to Defendants. (Doc. 6). On March 19, 2013, HHFS filed a motion for default judgment against Defendants. (Doc. 7). On May 16, 2013, prior to a hearing on the motion, counsel appeared for Defendants. (Doc. 9). On June 18, 2013, Defendants filed an Answer with Counterclaims. (Doc. 12). The counterclaims included Breach of Franchise Agreement (Counterclaim One), Breach of Franchise Agreement through

---

[1] HHFS filed a separate motion for summary judgment on its claims. An order on that motion was filed contemporaneously with this order.

1

Failure to Provide Electronic Access to Franchisor Services (Counterclaim Two), Breach of Franchise Agreement through Establishment of a Competing Franchise Business (Counterclaim Three), Fraud and Misrepresentation (Counterclaim Four), Negligent Misrepresentation (Counterclaim Five), and Breach of Good Faith and Fair Dealing (Counterclaim Six). (Doc. 12). A default judgment thus was not entered against Defendants.

On November 1, 2013, Defendants' counsel filed a motion to withdraw as counsel. (Doc. 19). In a November 6, 2013 status call, the Court indicated it would grant the motion to withdraw, but would attempt to contact Defendants to keep the matter progressing. In the meantime, HHFS filed its motion for summary judgment on the counterclaims. (Doc. 24). After having received no indication from Defendants as to how they would proceed in this matter once counsel withdrew, the Court granted counsel's motion to withdraw and set a status call, providing notification to Aronson via regular U.S. mail to the address she provided to the Court. Neither Aronson nor any representative for Defendants appeared on that status call. Neither Aronson nor any representative for Defendants has since notified the Court of an intent to proceed in the lawsuit.

    **B.**    <u>Uncontested Factual Evidence</u>

The following relevant facts set forth by HHFS are uncontested by Defendants.

HHFS is an Ohio Corporation with its principal place of business in Cincinnati, Ohio. (Doc. 23, PageID 262). It franchises business that offer senior care, home health care, personal emergency response, medication management, and vital signs monitoring services. (Id., PageID 263). Specifically, the "Home Helpers franchise" offers senior care and home healthcare services identified by the trademark "HOME HELPERS" while the "Direct Link franchise" offers personal emergency response, medication management, and vital signs monitoring

services identified by the trademark DIRECT LINK.  (Id.).  HHFS does not offer franchises under the name "TruBlue."  (Id., PageID 270).  TruBlue is instead offered by a corporation named T.B. Franchising Systems, Inc., and that business provides maid, lawn care, and home repair services under the trademark TRUBLUE.  (Id.).  TruBlue franchises do not compete with the Home Helpers franchises or the Direct Link franchises.  (Id.).

Aronson is a former Home Helpers franchisee and a former Direct Link franchisee.  (Id., PageID 263).  She owns and operates Redi to Help, and operated her Home Helpers franchise and Direct Link franchise in coordination with Redi to Help.  (Id., PageID 263).

In February 2007, HHFS provided Aronson with a copy of HHFS's Uniform Franchise Offering Circular, as was required at that time by the Federal Trade Commission's 1994 Trade Regulation Rule entitled *Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures* (16 CFR 436).  (Id.).  The UFOC fully disclosed the nature and risks of the franchises offered by HHFS.  (Id.).

Effective April 2007, Aronson signed a Home Helpers franchise agreement and a Direct Link franchise agreement with HHFS in Hamilton County, Ohio.  (Id; Doc. 1-1, PageID 19-106.).  Each franchise agreement provided for a ten-year term.  (Doc. 23, PageID 263; *see also* Doc. 1-1, PageID 23, 65).  Aronson assigned her interest to and operated the franchises in conjunction with Redi to Help.  (Doc. 23, PageID 263).

In April 2007, HHFS provided Aronson with five days of initial training at its headquarters in Cincinnati, Ohio.  (Id., PageID 264).  While the franchises were operating, HHFS also provided or made available assistance to Defendants, including but not limited to regular field support, an office landing page on the Home Helpers branded website, multiple educational series, monthly newsletters, sample documents and templates, manuals, and other

assistance and support.  (Id., PageID 264).  That same training has been used by more than 300 Home Helpers and Direct Link franchise owners since 1997.  (Id.).  The training and support that HHFS provides to its franchise owners is unique in its quality and with respect to the features such as (a) the inclusion of Home Helpers University, an exclusive and innovative professional development program offered at no additional cost that includes educational and training opportunities as well as three levels of Caregiver Certification, (b) the ability of Home Helpers franchises to offer clients Direct Link branded personal emergency response, medication management, and vital signs monitoring products and services, (c) the ability to offer "At Your Service" concierge program, and (d) the provision of a regional field consultant for each franchise office who provides ongoing support and in-person visits at least twice a year.  (Id., PageID 264-65).  HHFS also is one of the largest home healthcare systems in the United States.  (Id.).

In January 2009, HHFS terminated Defendants' franchise agreements due to Defendants' failure to make the required Royalty and National Branding Fund payments.   (Id., PageID 267).  In April 2009, however, HHFS and defendants negotiated a rescission of the termination as set forth in the Rescission Agreement.  (Id., PageID 267, 274-76).  Both Defendants acknowledged that they were parties to the franchise agreements and ratified and affirmed the franchise agreements in all material respects.  (Id.).  As a condition of the rescission, Defendants agreed to release any and all claims that they may have had against HHFS.  (Id., PageID 267, 275).

Thereafter, Defendants again failed to pay Royalty and National Branding Fees, failed to submit Weekly Sale Reports to HHFS, and failed to submit their income tax returns to HHFS. (Id., PageID 267).  Defendants received multiple notifications of those breaches of the franchise agreements and were provided with opportunities to cure the breaches.  (Id., PageID 268).

Defendants did not have access to HHFS's franchisee intranet after September 2010 because they refused to install and use HomeTrak and FranConnect, two software applications necessary to access the intranet, and because Defendants were in default under the franchise agreements. (Id., PageID 269). Further, neither of the franchise agreements imposed any obligations upon HHFS to provide Defendants with online access to an intranet. (Id.). Defendants, however, continued to have access to HHFS's training webinars and HHFS continued to provide Defendants with electronic copies of all updates and modifications to the operations manuals and all seminar and training materials available at HHFS conferences until the termination of the franchise agreements. (Id.).

Defendants' Home Helpers and Direct Link franchise agreements were terminated effective August 23, 2011. (Id.).

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.*

On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 249. Where a party fails to address another party's assertion of fact, the Court may properly consider the fact undisputed for purposes of the motion and grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)-(3). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252. Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III. ANALYSIS

HHFS moves for summary judgment on all six of Defendants counterclaims. The Court first will address the four contract-based counterclaims. It then will address the two tort counterclaims.

### A. Contract-Based Counterclaims (Counterclaims 1, 2, 3 and 6)

To prove a breach of contract under Ohio law, a party must prove four elements: (1) the existence of a valid contract; (2) performance by the claimant; (3) breach by the opposing party; and (4) resulting damages. *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (citing *Wauseon Plaza Ltd. P'ship V. Wauseon Hardware Co.*, 156 Ohio App. 3d 575 (6th Dist. App. 2004)).[2] As explained below, Defendants have failed to make the requisite showings on

---

[2] Both franchise agreements indicate that Ohio law should govern any disputes arising thereunder. (Doc. 1-1, PageID 54, 94).

any of the four contract-based counterclaims.  HHFS therefore is entitled to summary judgment on each of those counterclaims.

### 1. First Counterclaim

In the first counterclaim, Defendants contend that HHFS breached the franchise agreements by providing "inadequate training, inadequate manual of business operation and inadequate services and marketing of the franchise business."  (Doc. 12, PageID 192).  Defendants contend that the breaches caused undue expense, burden and delay to Defendants, and resulted in damages such as the loss of purchase price for the franchises and lost profits.  (Id.).

HHFS seeks summary judgment on two grounds.  First, HHFS contends that summary judgment is appropriate on the first counterclaim because Defendants released any such claims against it.  The Court agrees.  Defendants' allegations indicate that the alleged breaches by HHFS occurred at or around the time Defendants signed the franchise agreements on March 7, 2007.  (Doc. 12, PageID 191-92).  HHFS has presented evidence that demonstrates that Defendants released any and all claims against HHFS arising on or before the April 2009 release date, which would include those arising around the time Defendants signed the franchise agreements.  (Doc. 23, PageID 274-76).  Defendants have presented no evidence or argument to the contrary.  Accordingly, no genuine issue of material fact exists, and HHFS is entitled to summary judgment on the first counterclaim based upon Defendants' release of those claims against it.

Second, HHFS contends that summary judgment also is appropriate because Defendants are unable to satisfy the third element of their breach-of-contract counterclaim.  Again, the Court agrees.  Not only have Defendants not identified a single provision of the franchise agreements

that they believe HHFS breached in relation to this counterclaim, but HHFS also has affirmatively presented evidence that demonstrates that Defendants were provided with extensive training, various manuals of business operations,[3] and multiple services and marketing information that were sufficient to allow Defendants to successfully operate the franchises in accordance with the franchise agreements. (Doc. 23, PageID 264; *see also* Doc. 1-1, PageID 27-28, 41, 67-68).[4]  Defendants have presented no evidence or argument to the contrary. Accordingly, no genuine issue of material fact exists, and HHFS is entitled to summary judgment on the first counterclaim for the additional reason that Defendants have failed to make a showing sufficient to establish the existence of an element essential to their counterclaim on which Defendants will bear the burden of proof at trial.

### 2. Second Counterclaim

In the second counterclaim, Defendants contend that HHFS breached the franchise agreements "by failing to provide Defendant Aronson access to online training, educational marketing, accounting, reporting, services as well as other critical franchisee support services purportedly made available by the Franchisor through secure connection to its intranet database." (Doc. 12, PageID 192-93). Defendants allege that Aronson "had numerous conversations with Franchisor's IT and support staff about the inability to access Franchisee information through the intranet and that despite communicating with the Franchisor, electronic access was not granted and/or restored."  (Id., PageID 193).

---

[3] Indeed, the franchise agreements signed by Aronson provide: "Franchisee shall conduct its operations hereunder in accordance with Franchisor's operations manual(s) (the "Manual") (as the same may be amended or modified from time to time), which *Franchisee acknowledges having received on loan from Franchisor*." (Doc. 1-1, PageID 37, 78) (emphasis added).

[4] To the extent that Defendants intend to argue that Plaintiff did not provide the required advertising or marketing of its franchise, the franchise agreements plainly state that: "Franchisee acknowledges that it shall be solely responsible for advertising and marketing the services offered by the franchised business." (Doc. 1-1, PageID 41, 82).

HHFS seeks summary judgment on two grounds. First, HHFS contends that summary judgment is appropriate on the second counterclaim to the extent the alleged breaches occurred on or before April 2009 because Defendants released any such claims against it. The Court agrees. Defendants' counterclaim does not specify when the alleged breaches by HHFS occurred. (*See* Doc. 12, PageID 192-93). Nevertheless, it appears that at least some of the alleged breaches may have occurred at or around the time Defendants signed the franchise agreements on March 7, 2007 up through April 2009. (*See id.*). HHFS has presented evidence that demonstrates that Defendants released any and all claims against HHFS arising on or before the April 2009 release date. (Doc. 23, PageID 274-76). Defendants have presented no evidence or argument to the contrary. Accordingly, no genuine issue of material fact exists with respect to the release of those claims arising on or before the April 2009 release date, and HHFS is entitled to summary judgment on the second counterclaim to the extent such claims were released by Defendants.

Second, HHFS contends that summary judgment also is appropriate because Defendants are unable to satisfy the third element of their second breach-of-contract counterclaim. Again, the Court agrees. Not only have Defendants not identified a single provision of the franchise agreements that they believe HHFS breached in relation to this counterclaim, but HHFS has affirmatively presented evidence that demonstrates it had no contractual obligation to provide access to the Intranet such that it was unable to breach the franchise agreements in that respect. (Doc. 23, PageID 269).[5] HHFS also has presented evidence that demonstrates that Defendants had no access to the Intranet after September 2010 because of their refusal to install the

---

[5] The franchise agreement provide the franchisor with "the right, but not the obligation, to establish a Website . . . or other electronic system providing private and secure communications (*e.g.,* an intranet) between Franchisor, Franchisee, other franchisees, and other persons and entities as determined by Franchisor, in its sole discretion." (Doc. 1-1, PageID 35, 76).

necessary software, and not because of any contractual failure by HHFS. (Doc. 23, PageID 269).[6] Further, HHFS has presented evidence showing that Defendants were provided with extensive training, materials, and support by HHFS up until the termination of the franchise agreements. (Doc. 23, PageID 264). Defendants have presented no evidence or argument to the contrary. Accordingly, no genuine issue of material fact exists, and HHFS is entitled to summary judgment on the second counterclaim because Defendants have failed to make a showing sufficient to establish the existence of an element essential to their counterclaim on which Defendants will bear the burden of proof at trial.

### 3. Third Counterclaim

In the third counterclaim, Defendants contend that HHFS breached Section 1.3 of the franchise agreements "by establishing a competing franchise sold, marketed and franchised under the name TruBlue within the geographic territory Aronson purchased from [HHFS.]" (Doc. 12, PageID 194).

Section 1.3 of the Home Helpers franchise agreement provides:

> During the term of this Agreement, Franchisor shall not establish or franchise another to establish a business substantially similar to the franchised business within the Franchisee's Territory. As used in this Agreement, the term "*substantially similar*" does not include a business offering personal emergency response systems or related services, unless such business also offers non-medical home care aide, personal care aide assistance, and companion care services. Franchisee acknowledges that the franchise granted hereunder is otherwise non-exclusive and is granted subject to the terms and conditions of Section 8.6 and 8.7 of this Agreement. Franchisee further acknowledges that Franchisor offers personal emergency response systems and related services through licensed franchises under the name DIRECT LINK® ("Direct Link Franchises"), and nothing in this Agreement prohibits Franchisor from operating or granting Direct Link Franchises within Franchisee's Territory.

---

[6] To the extent that that evidence shows a failure to perform by Defendants under the franchise agreements (*see* Doc. 1-1, PageID 34-35, 75-76), Defendants also would be unable to satisfy the second element of their counterclaim for any alleged breach by HHFS after September 2010.

(Doc. 1-1, PageID 23). Similarly, Section 1.3 of the Direct Link franchise agreement provides:

> During the term of this Agreement, Franchisor shall not establish or franchise another to establish a business substantially similar to the franchised business within the Franchisee's Territory. As used in this Agreement, the term "*substantially similar*" does not include a business offering non-medical, home care aide, personal care aide assistance, or companion care services, unless such business also offers personal emergency response products and services. Franchisee acknowledges that the franchise granted hereunder is otherwise non-exclusive and is granted subject to the terms and conditions of Section 8.6 and 8.7 of this Agreement. Franchisee further acknowledges that Franchisor offers and sells non-medical home care aide, personal care aide assistance, and companion care services through licensed franchises under the name HOME HELPERS® ("Home Helpers Franchises"), and nothing in this Agreement prohibits Franchisor from operating or granting Direct Link Franchises within Franchisee's Territory.

(Doc. 1-1, PageID 64).

HHFS seeks summary judgment because Defendants are unable to satisfy the third element of their third breach-of-contract counterclaim. The Court agrees. HHFS has presented evidence that demonstrates that HHFS offers and supports only Home Helpers and Direct Link franchises and does not offer franchises under the name "TruBlue" such that it could not have breached Section 1.3 of the franchise agreements as alleged by Defendants. (Doc. 23, PageID 270). HHFS further has presented evidence that TruBlue is a separate corporation that is engaged in the business of providing maid, lawn care, and home repair services rather than competing senior care and home health services or competing personal emergency response, medication management, and vital signs monitoring services. (Doc. 23, PageID 270-71). As such, the establishment of a TruBlue franchise would not be in breach of Section 1.3 of the franchise agreements due to the lack of substantial similarity of and competition with the Home Helpers or Direct Links franchise. Finally, HHFS presents evidence that demonstrates that even if TruBlue was substantially similar (which it is not based upon the evidence presented), no TruBlue franchises have been established in an area to compete with Defendants. (Doc. 23,

PageID 271). Defendants have presented no evidence or argument to the contrary. Accordingly, no genuine issue of material fact exists, and HHFS is entitled to summary judgment on the third counterclaim because Defendants have failed to make a showing sufficient to establish the existence of an element essential to their counterclaim on which Defendants will bear the burden of proof at trial.

### 4. Sixth Counterclaim

In the sixth counterclaim, Defendants contend that HHFS "was under a duty to negotiate fairly and in good faith with Aronson relative to the sale of its franchise business model" and that it "breached its duty of good faith and fair dealing by inducing Aronson to purchase its model by representing the exclusivity of the business system and misleading and misstating the nature of competing business operations using similar techniques." (Doc. 12, PageID 196).

HHFS seeks summary judgment on two grounds. First, HHFS contends that summary judgment is appropriate on the second counterclaim because the alleged breach occurred on or before the April 2009 release date. The Court agrees. The counterclaim allegations demonstrate that the alleged breach occurred at or around the time Defendants signed the franchise agreements on March 7, 2007. (*See id.*). HHFS has presented evidence that demonstrates that Defendants released any and all claims against HHFS arising on or before the April 2009 release date. (Doc. 23, PageID 274-76). Defendants have presented no evidence or argument to the contrary. Accordingly, no genuine issue of material fact exists, and HHFS is entitled to summary judgment on the sixth counterclaim because any such claim arose before April 2009 and thus was released by Defendants.

Second, HHFS contends that summary judgment also is appropriate because Defendants are unable to demonstrate a lack of good faith and fair dealing. Again, the Court agrees. The

duty of good faith and fair dealing is a duty that is implied in some contractual relationships, and which requires the parties to deal with each other fairly so that neither prohibits the other from realizing the agreement's benefits. *Fifth Third Mortg. Co. v. Chi. Title Ins. Co.*, 758 F. Supp. 2d 476, 490 n. 19 (S.D. Ohio 2010) (citing Black's Law Dictionary (7th ed. 1999)).[7] Plaintiff has affirmatively presented evidence that Plaintiff's system is exclusive and innovative, and that it made complete disclosures to Aronson as required by law that described the nature of the business and its risks, so that it could not have acted unfairly or in bad faith. (Doc. 23, PageID 264-65). Defendants have presented no evidence or argument to the contrary. Accordingly, no genuine issue of material fact exists, and HHFS is entitled to summary judgment on the sixth counterclaim because Defendants have failed to make a showing sufficient to establish the existence of an element essential to their counterclaim on which Defendants will bear the burden of proof at trial.

### B. Tort Counterclaims (Counterclaims 4 and 5)

Defendants assert two tort counterclaims against HHFS, which include (1) fraud and misrepresentation and (2) negligence. (Doc. 12, PageID 195-96). As explained below, Defendants have failed to make the requisite showings on those two tort counterclaims. HHFS therefore is entitled to summary judgment on those counterclaims.

#### 1. Fourth Counterclaim

---

[7] Although not raised by Plaintiff, the Court notes that Ohio courts have held that "the covenant of good faith is part of a contract claim, and does not stand alone as a separate cause of action from a breach of contract claim." *Westwinds Dev. Corp. v. Outcalt*, No. 2008-G-2863, 2009-Ohio-2948, 2009 Ohio App. LEXIS 2519, at *29 (8th Dist. June 19, 2009) (citing *Interstate Gas Supply, Inc. v. Calex Corp.*, No. 04AP-980, 2006-Ohio-638, 2006 Ohio App. LEXIS 575, at *55 (10th Dist. Feb. 14, 2006)); *see also Northeast Ohio College of Massotheraphy v. Burek*, 144 Ohio App. 3d 196, 204 (7th Dist. 2001) ("There is no separate tort cause of action for breach of good faith and separate from a breach of contract claim."). As the Court has dismissed the counterclaims for breach of contract, Defendants' claim for breach of good faith and fair dealing likewise must be dismissed.

In the fourth counterclaim, Defendants contend that HHFS engaged in fraud and misrepresentation. (Doc. 12, PageID 195). Defendants allege that "[d]uring the sales presentation, Franchisor heavily marketed to Franchisee the benefits of franchise ownership, including but not limited to the ability to gain market share through the use of Franchisor's 'exclusive business system.'" (Doc. 12, PageID 195). Defendants allege that Aronson relied upon those representations "in deciding to enter into the Franchise Agreement with the Plaintiff" but that those assurances and representations did not contribute to or assist Aronson in her ability to operate a successful franchise. (Id.). Defendants contend that the "exclusive business systems" marketed to Aronson was "commonplace in the industry and widely circulated amongst Aronson's competition." (Id.).

HHFS seeks summary judgment on two grounds. First, HHFS contends that summary judgment is appropriate on the fourth counterclaim based upon the statute of limitations. The Court agrees. Defendants' allegations indicate that the alleged fraud and misrepresentations by HHFS occurred before Defendants signed the franchise agreements on March 7, 2007. (Doc. 12, PageID 191-92). The counterclaim was not filed until more than six years later, on June 18, 2013. (Doc. 12). Given that there is a four-year statute of limitations for fraud and misrepresentation, the counterclaim is time barred. Ohio Rev. Code § 2305.09(C).[8] Defendants have presented no evidence or argument to suggest a contrary finding is warranted. Accordingly, no genuine issue of material fact exists, and HHFS is entitled to summary judgment on the fourth counterclaim based upon the statute of limitations.

Second, HHFS contends that summary judgment also is appropriate because Defendants are unable to satisfy each of the elements of the fourth counterclaim. Again, the Court agrees.

---

[8] Plaintiff alleged an affirmative defense of the statute of limitations in the answer to the counterclaims. (Doc. 13, PageID 203).

14

Under Ohio law, the elements of fraud and misrepresentation are: (1) a representation (or concealment of a fact when there is a duty to disclose) (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance. *Volbers-Klarich v. Middletown Mgmt.*, 125 Ohio St. 3d 494, 501 (2010) (citing *Burr v. Bd. of County Comm'rs*, 23 Ohio St. 3d 69, 73 (1986)). HHFS has presented evidence that demonstrates that the representations upon which Defendants base their fourth counterclaim were not false or misleading. Specifically, HHFS has presented evidence that the business system of HHFS is exclusive and innovative in multiple respects. (Doc. 23, PageID 264-65). Defendants have presented no evidence or argument to the contrary. Accordingly, no genuine issue of material fact exists, and HHFS is entitled to summary judgment on the fourth counterclaim for the additional reason that Defendants have failed to make a showing sufficient to establish the existence of an element essential to their counterclaim on which Defendants will bear the burden of proof at trial.

### 2. Fifth Counterclaim

In the fifth counterclaim, Defendants contend that HHFS engaged in negligent misrepresentation. (Doc. 12, PageID 195-96). Defendants allege that HHFS "had a duty to properly and fully advise Aronson as to the nature and risks of the proposed Franchise sale transaction" but was "negligent in its disclosure regarding the risks associated with [its] 'exclusive business system' including but not limited to the risks associated with competition utilizing independent contractors." (Doc. 12, PageID 196).

15

HHFS seeks summary judgment on two grounds. First, HHFS contends that summary judgment is appropriate on the fifth counterclaim based upon the statute of limitations. The Court agrees. Defendants' allegations indicate that the alleged negligent misrepresentation by HHFS occurred before Defendants signed the franchise agreements on March 7, 2007. (Doc. 12, PageID 191-92). The counterclaim was not filed until more than six years later, on June 18, 2013. (Doc. 12). Given that there is a two-year statute of limitations for negligence, the counterclaim is time barred. Ohio Rev. Code § 2305.10(A).[9] Defendants have presented no evidence or argument to suggest a contrary finding is warranted. Accordingly, no genuine issue of material fact exists, and HHFS is entitled to summary judgment on the fifth counterclaim based upon the statute of limitations.

Second, HHFS contends that summary judgment also is appropriate because Defendants are unable to satisfy each of the elements of the fifth counterclaim. Again, the Court agrees. Under Ohio law, negligent misrepresentation has been described as follows: "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Delman v. City of Cleveland Heights*, 41 Ohio St. 3d 1, 4 ( 1989) (citing 3 Restatement of the Law 2d, Torts 126-27, § 552(1) (1965)). HHFS has presented evidence that demonstrates that the business system of HHFS is exclusive and innovative in multiple respects and that it fully disclosed to Aronson the nature of the business and its risks. (Doc. 23, PageID 263-65). Defendants have presented no evidence or

---

[9] Plaintiff alleged an affirmative defense of the statute of limitations in the answer to the counterclaims. (Doc. 13, PageID 203).

16

argument to demonstrate that any of the information presented was false or to show that HHFS failed to exercise reasonable care or competence in obtaining or communicating the information to Defendants. Defendants cannot rest on their pleadings to defeat summary judgment. Accordingly, no genuine issue of material fact exists, and HHFS is entitled to summary judgment on the fifth counterclaim because Defendants have failed to make a showing sufficient to establish the existence of elements essential to their counterclaim on which Defendants will bear the burden of proof at trial.

### IV. CONCLUSION

For the foregoing reasons, HHFS's Motion for Summary Judgment on the Counterclaims of Defendants (Doc. 24) is **GRANTED**, and all of the Counterclaims of Defendants (Counterclaims One through Six) (Doc. 12, PageID 191-97) are hereby **DISMISSED** with prejudice.

**IT IS SO ORDERED**.

s/Michael R. Barrett
Michael R. Barrett, Judge
United States District Court